UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS WERTZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-00579-NCC |
| | ) |
| | ) |
| MERCY HEALTH and MHM SUPPORT | ) |
| SERVICES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Mercy Health's and MHM Support Services' (collectively "Mercy" or "Defendants") Motion for Summary Judgment (Doc. 19), Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. 21), and Defendants' Statement of Uncontroverted Material Facts (Doc. 20), to which Plaintiff filed a pro se Response[1] (Doc. 27) and Suggestions in Support of his Response (Doc. 28), and Defendants' filed a Reply (Doc. 29). Plaintiff also filed, without leave, a surreply[2] (Doc. 30). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 16). For the following reasons, Defendants' Motion for Summary Judgment (Doc. 19) will be **GRANTED**.

---

[1] Plaintiff was initially represented by retained counsel who withdrew after Defendants filed their Motion for Summary Judgment. *See* Doc. 23. After the expiration of time provided for Plaintiff to hire a new attorney, Plaintiff elected to represent himself. *See* Docs. 24, 25, and 26.

[2] Plaintiff filed a sur-reply without seeking leave of Court. *See* Doc. 30. According to Local Rule 4.01(C), after the moving party files a reply to a memorandum in opposition to a motion, "[a]dditional memoranda may be filed by either party **only with leave of Court**" (emphasis added). The Court reviewed the sur-reply but found it irrelevant to the determination of the issues at hand.

Case: 4:23-cv-00579-NCC   Doc. #:  31   Filed: 07/16/24   Page: 2 of 16 PageID #: 1401

## I. BACKGROUND

On July 19, 2023, the Court held a Rule 16 conference and entered a Case Management Order (Doc. 18) limiting this matter to the threshold issue of Defendants' potential status as an exempt religious organization. The Court determined it would then reach the merits if this issue is not fully dispositive of the claims (*id.*).

The Court must first address which facts are before it for the purpose of summary judgment. To support their Motion for Summary Judgment, Defendants filed a Statement of Uncontroverted Material Facts making specific references to the exhibits attached to the statement. *See* Doc. 20. Plaintiff fails, in his two responsive documents, to properly controvert most of Defendants' statements of fact. *See* Docs. 27 and 28.

Federal Rule of Civil Procedure 56(c)(1) demands that a party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A). The moving party's Statement of Uncontroverted Material Facts "are deemed admitted if the opposing party does not controvert those facts with specific references to the record as required by Fed. R. Civ. P. 56(c)(1)." *Ashley v. McKinney*, No. 4:19-cv-00309-MTS, 2021 WL 1198066, at *1 (E.D. Mo. Mar. 29, 2021). Local Rule 4.01(E), sets forth the same premise: a movant's facts are deemed admitted if not specifically controverted by the party opposing the motion. *See* L.R. 4.01(E).

While the Court construes Plaintiff's pleadings liberally, "[e]ven pro se litigants must comply with court rules and directives." *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005); *see also Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) (per curiam) ("Although pro se

2

pleadings are to be construed liberally, pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law.").

Plaintiff's responses articulate reasons he disagrees with Defendants' assertions, but they lack factual support or any specific references to the record.  *See* Docs. 27, 28.  In accordance with the Federal and Local Rules, the facts contained in Defendants' Statement of Uncontroverted Facts (Doc. 20) are deemed admitted by Plaintiff for the purpose of ruling on this motion.  Despite this, summary judgment is not automatically granted in Defendants' favor, the undisputed "facts still must establish that they are entitled to judgment as a matter of law," in order for the Court to grant Defendants' motion.  *Davis v. Webb*, No. 4:11-CV-1906-JAR, 2014 WL 1314938, at *1 (E.D. Mo. Mar. 28, 2014).

Accordingly, the Court sets out the undisputed material facts below.

## II.  FACTS

### A.  Mercy's Status as a Religious Organization

Mercy[3] was founded by the Sisters of Mercy, a Roman Catholic religious order of nuns (Doc. 20 ¶ 1).  Mercy Health Ministries is a public juridic personality of the Roman Catholic Church, organized under the Catholic Church's Canon law (*id*. ¶ 2).  Mercy Health Ministries is

---

[3]Defendants, throughout their Motion documents (Docs. 19, 20, 21) generally refer to both Mercy Health and MHM Support Services collectively as "Mercy" or "Defendants," although sometimes refer to each separately.  In Plaintiff's Complaint, Plaintiff identifies Mercy Health as the owner and operator of Mercy Tech, where Plaintiff worked (Doc. 1 at 3).  Plaintiff identifies MHM Support Services as an "employer" who paid Plaintiff wages for the work he performed at Mercy Tech (*id*. at 4).  Plaintiff further alleges that as an employee of MHM Support Services, he was required to follow the policies, procedures, and regulations established by Mercy Health while working at Mercy Tech (*id*.).  Plaintiff also alleges that discovery will show that "Defendants are a single employer or integrated enterprise, or a joint employer regarding Plaintiff's employment at Mercy Tech" (*id*.).

In Defendants' Answer, they assert that Mercy Health was not Plaintiff's employer, MHM Support Services was, and that its use of the term "Defendant" or "Mercy" refers to MHM Support Services and any other related entity found to have employed Plaintiff (Doc. 13 at 1 n.1).  Additionally, Plaintiff named only "Mercy Health" in his Charge of Discrimination and did not file a Charge naming MHM Support Services (Doc. 1-1).  In light of this, it appears that any claims against MHM Support Services are barred for failure to exhaust administrative remedies, but Defendants did not move to Dismiss MHM Support Services on this basis.  The parties have not parsed out separate or particular roles or liabilities between the two Defendants and those distinctions appear to be immaterial to the ultimate outcome.

3

an entity for Canon law purposes only and was formed in accordance with the Canonical Statutes; it is not incorporated under the civil laws of any state (*id*. ¶ 3).  Mercy Health is the civil legal entity created and organized under Missouri law, through which Mercy Health Ministries and the Catholic Church perform their healthcare services and mission work (*id*. ¶ 4).

Mercy Health, Mercy Health Ministries, and all of Mercy Health's other wholly-owned subsidiaries are listed in the Official Catholic Directory, can own property in the name of the Catholic Church, and according to the IRS, are religious non-profit organizations (*id*. ¶ 6). Mercy Health's Board of Directors consists of four nuns from the religious order of the Sisters of Mercy and is accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life (*id*. ¶ 7).

Mercy Health's mission statement provides, "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service" (*id*. ¶ 5).  Mercy Health's Articles of Incorporation and Bylaws identify its purpose as continuing the healing acts of Jesus Christ in accordance with the doctrines and tenets of the Catholic Church (*id*. ¶ 8).  Mercy follows the Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Bishops (*id*. ¶ 9).  At Mercy, prayer is communicated over the public address system at least once per day and the workplace is adorned with religious imagery (*id*. ¶ 10).

MHM Support Services is a wholly-owned subsidiary of Mercy Health (*id*. ¶ 11). According to MHM Support Services' Bylaws, its purpose is "to witness to Christ's concern for the care of the sick and injured and the teaching of the Roman Catholic Church regarding Christian health services and charity . . . ." (*id*. ¶ 12).  Additionally, MHM Support Services was organized "[t]o perform activities related to the provision of health services under the

sponsorship of MHM," or Mercy Health Ministry, "the pontifical public juridic person granted juridic personality by decree of the Congregation for Institutes of Consecrated Life and Societies of Apostolic Life, dated May 15, 2008 . . . . ." (*id*. ¶ 13).  MHM Support Services is listed in the Official Catholic Directory (*id*. ¶ 14).

### B.  Plaintiff's Employment and Termination

Plaintiff worked for Mercy as a Vendor Management Office manager (Doc. 20 ¶ 16). During the COVID-19 pandemic, Mercy Health and other Mercy subsidiaries and entities instituted a COVID-19 Vaccination Policy, which required all employees to receive a COVID-19 vaccine unless they requested, and were approved for, a religious or medical exemption from the mandatory policy (*id*. ¶ 17).  Plaintiff submitted a religious exemption request based on his Catholic religious belief (*id*. ¶ 18).  Plaintiff's request was denied, he did not get vaccinated, and he was terminated on October 28, 2021 (*id*. ¶ 19).

On an unknown date, Plaintiff filed a complaint with the Missouri Commission on Human Rights ("MCHR") (*see id.* ¶ 22).  On July 17, 2023, the MCHR issued a Notice of Termination of Proceedings, and dismissed Plaintiff's Charge on the basis that it lacked jurisdiction because Mercy and all of its wholly-owned subsidiaries and affiliates are "owned and operated by a religious organization"  (*id*. ¶ 15).  The MCHR has dismissed numerous discrimination charges against Mercy on this basis, including Plaintiff's (*id*.).

On May 12, 2022, Plaintiff filed a Charge of Discrimination with the EEOC naming Mercy Health as the Respondent (*id*. ¶ 21, Doc. 1 ¶ 53).  An attachment to Plaintiff's Complaint, however, reflects that Plaintiff filed his Charge on August 23, 2022 (Doc. 1-1 at 3). On January 31, 2023, the EEOC issued Plaintiff a Notice of Right to Sue, which Plaintiff claims he received on February 6, 2023 (Doc. 1 ¶ 55).

5

**C. Plaintiff's Complaint**

In Count I, Plaintiff alleges religious discrimination under Title 42 U.S.C. § 2000e and in Count II, Plaintiff alleges retaliation under Title VII U.S.C. § 2000e *et seq.*, and seeks actual, compensatory, and punitive damages, costs, attorney's fees, interest, and all other available legal and equitable relief (Doc. 1 at 8-10).

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once the moving party demonstrates that there is no genuine issue of material fact, the "opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing a genuine factual dispute that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "[A] dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson*, 477 U.S. at 248).

Furthermore, in ruling on a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

6

## IV. ANALYSIS

In their Motion for Summary Judgment, Defendants assert that Plaintiff's claims fail as a matter of law because he did not timely file a Charge of Discrimination with the EEOC, and even if he did, the claims still fail because Defendants are exempt from religious discrimination and retaliation liability under Title VII (Doc. 19 at 2).  Contrarily, Plaintiff asserts that his EEOC claims were timely because they were subject to the 300-day deadline as a result of his filing a complaint with a State agency, the MCHR (Doc. 27 at 2).  Plaintiff also argues that a fact-specific inquiry is necessary to determine whether Defendants are exempt from liability under Title VII (*id.* at 2-3).

### A.  Timeliness of EEOC Claims

Defendants assert that Plaintiff's claims are barred because he failed to file his Charge of Discrimination with the EEOC within 180 days of the unlawful employment practice, and Plaintiff, therefore, failed to exhaust his administrative remedies (Doc. 21 at 3-4).  Plaintiff both alleges and admits that his employment was terminated on October 28, 2021, and that he filed his charge of discrimination on May 12, 2022 (Doc. 1 at ¶¶ 6, 51, 53, Doc. 28 at 1), equating to a span of 196 days between termination and filing.[4]  Plaintiff asserts that he had 300 days to file his charge under the relevant statute, as a result of filing a claim with a state agency (Doc. 27 at 2).  Defendants disagree however, arguing that the 300-day filing deadline applies when a Fair Employment Practices ("FEP") agency, such as the MCHR, has authority to investigate the discrimination charge (Doc. 21 at 5).  In this case, however, where the State FEP agency does not have the authority to investigate the discrimination charge and the state anti-discrimination

---

[4] Defendants argue and the Court agrees that Plaintiff's own copy of the Charge filed with the EEOC contains a claim date of August 25, 2022, which Defendants assert equates to a filing date of 299 days post-termination, but by the Court's calculation, equates to 301 days post-termination (Doc. 1-1 at 3).

7

statute does not provide protection from the discrimination alleged, then the 180-day filing deadline applies (*id*.).  Defendants assert that the MCHR does not have the authority or the jurisdiction to grant or seek relief on behalf of Plaintiff and against Defendants because Mercy is a religious organization owned and/or operated by the Catholic Church (*id*. at 6).  As a religious organization, Defendants assert they are exempt from the definition of employer under the MHRA, that the MCHR consistently determines that it lacks jurisdiction over discrimination charges filed against Mercy and did so with regard to Plaintiff's Charge of Discrimination specifically, and therefore Plaintiff was subject to the 180-day filing deadline (*id*.).

Title VII requires "that an employee complaining of discrimination follow administrative procedures before filing a lawsuit in federal court," including "filing a charge of discrimination with the EEOC within 180 days of an allegedly unlawful employment practice."  *Kirklin v. Joshen Paper & Packaging of Ark. Co.*, 911 F.3d 530, 534 (8th Cir. 2018).  Exhaustion of administrative remedies is considered central to the Title VII statutory scheme.  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  The exhaustion requirement exists to provide "the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  *Id*.  An individual must meet two requirements to exhaust administrative remedies: "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue."  *Id*. citing 42 U.S.C. § 2000e-5(b), (c), (e).  "Failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Kirklin*, 911 F.3d at 534 citing *Miles v. Bellfontaine Habilitation Ctr*., 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam).

More specifically, "Title VII requires that before a plaintiff can bring suit in court to

8

allege unlawful discrimination, [he] must file a timely charge with the EEOC or a state or local agency with authority to seek relief." *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012), citing 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Williams*, 21 F.3d at 222.  The statute provides:

> A charge under this section shall be filed within **one hundred and eighty days** after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, **except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice** or to institute criminal proceedings with respect thereto upon receiving notice thereof**, such charge shall be filed by or on behalf of the person aggrieved within three hundred days** after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

Title 42 U.S.C. § 2000e-5(e)(1) (emphases added).  In other words, a claimant must file a charge of discrimination within 180 days of the alleged discriminatory act, unless the claimant has first begun proceedings with a State agency with authority to grant relief, and in that case, a claimant has 300 days after the alleged unlawful employment practice occurred to file the charge with the EEOC.  See *id*.

Under 29 C.F.R. § 1601.70(a), the EEOC may designate state and local agencies as "FEP agencies."  *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1082 (9th Cir. 2006).  The MCHR is designated by the EEOC as an FEP agency without any exceptions.  29 C.F.R. § 1601.74(a).  Under the Missouri Human Rights Act ("MHRA"), however, the term "employer," specifically excludes "corporations and associations owned or operated by religious or sectarian organizations."  Mo.Rev.Stat. § 213.010(8).  In other words, such corporations are "not subject

9

to the employment discrimination provisions set forth in Mo.Rev.Stat. § 213.055." *Wirth v. College of the Ozarks*, 26 F.Supp.2d 1185, 1187 (W.D. Mo. Aug. 26, 1998).

"The EEOC's regulations provide that the 180-day time limit applies if the State or local agency FEP agency lacks subject matter jurisdiction over a charge." *MacDonald*, 457 F.3d at 1082. The EEOC's regulations specifically state:

> A jurisdiction having a FEP agency without subject matter jurisdiction over a charge (e.g., an agency which does not cover sex discrimination or does not cover nonprofit organizations) **is equivalent to a jurisdiction having no FEP agency**. Charges over which a FEP agency has no subject matter jurisdiction are filed with the Commission upon receipt and are timely filed if received by the Commission within **180 days** from the date of the alleged violation.

29 C.F.R. § 1601.13(a)(2) (emphases added).

It is undisputed that on July 17, 2023, the MCHR issued a Notice of Termination of Proceedings to Plaintiff's Charge, dismissing his Charge and stating that it lacked jurisdiction because Mercy was owned and operated by a religious organization (Doc. 20 at ¶ 22). The 180-day deadline, and not the 300-day deadline applies in this case because the MCHR did not have jurisdiction over Plaintiff's claims. *See MacDonald*, 457 F.3d at 1088 (finding that the relevant FEP did not have subject matter jurisdiction over the plaintiff's charges and therefore the 180-day time limit applied).

Assuming Plaintiff filed his Charge with the EEOC on May 12, 2022 (and not August 25, 2022, as his own evidence suggests), he failed to meet the 180-day filing deadline, and Defendants are entitled to summary judgment as a matter of law. *See Kirklin*, 911 F.3d at 534 (it is proper for a district court to grant summary judgment in favor of defendant when plaintiff files a charge with the EEOC out of time and therefore fails to exhaust administrative remedies).

Furthermore, even if the Court determined that Plaintiff's claims were timely filed, Defendants are still entitled to summary judgment because they are exempted from Title VII

10

religious discrimination liability as a religious organization.

### B. Religious Exemption

Defendants assert that even if Plaintiff had timely filed his discrimination charge, Defendants are still entitled to summary judgment on all of Plaintiff's claims because Mercy is a religious organization exempt from Title VII's prohibitions against religious discrimination and retaliation (Docs. 19 at 2; 21 at 7-15). Plaintiff responds that the previous cases determining Mercy's status as a religious organization do not directly address the facts currently before the Court and a fact-specific inquiry and examination are necessary (Doc. 27 at 2, 3). Based on precedent as well as the facts currently before it, the Court agrees that Defendants are exempt from religious discrimination and retaliation claims, and Plaintiff's claims fail as a matter of law.

Under Title VII, it is unlawful for any employer "to . . . discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). A qualifying "religious organization," however, is exempt from claims of religious discrimination. *Jacobs v. Mercy Health*, No. 4:22-cv-01204-AGF, 2024 WL 894861, at *4 (E.D. Mo. Mar. 1, 2024). "To 'minimize governmental interference with the decision-making process in religions,' Congress amended Title VII to exempt a qualifying 'religious organization' from claims of religious discrimination 'with respect to the employment of individuals of a particular religion to perform work connected with the carrying on' by such organizations." *Id.* quoting 42 U.S.C. § 2000e-1(a). If "an entity is determined to be a 'religious organization,' courts do not inquire into the organization's justifications behind its employment decisions." *Jacobs*, 2024 WL 894861, at *4 quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989).

Title VII does not define "religious entity," resulting in courts considering "a variety of

11

factors when analyzing whether an employer falls within the scope of the § 2000e-1(a) exemption." *Conway v. Mercy Hosp. St. Louis*, No. 4:22-CV-1113 RLW, 2024 WL 551892, at *3 (E.D. Mo. Feb. 12, 2024) (quoting *Boydston v. Mercy Hosp. Ardmore, Inc.*, No. CIV-18-444-G, 2020 WL 1448112, at *4 (W.D. Okla. Mar. 25, 2020). Although the Eighth Circuit Court of Appeals has not yet established guidance for determining whether an entity is a religious organization under Title VII, "this district and several others have relied on the Third Circuit's approach in *LeBoon v. Lancaster Jewish Community Center Association*, 503 F.3d 217, 226 (3d Cir. 2007)." *Jacobs*, 2024 WL 894861 at *4. In *LeBoon*, the Third Circuit utilized nine factors to determine whether an entity is a religious organization under the statute's exemption:

> (1) whether the entity operates for a profit, (2) whether it produces a secular product, (3) whether the entity's articles of incorporation or other pertinent documents state a religious purpose, (4) whether it is owned, affiliated with or financially supported by a formally religious entity such as a church or synagogue, (5) whether a formally religious entity participates in the management, for instance by having representatives on the board of trustees, (6) whether the entity holds itself out to the public as secular or sectarian, (7) whether the entity regularly includes prayer or other forms of worship in its activities, (8) whether it includes religious instruction in its curriculum, to the extent it is an educational institution, and (9) whether its membership is made up by coreligionists.

*LeBoon*, 503 F.3d at 226; *Conway*, 2024 WL 551892 at *4 (citing *LeBoon* factors); *Jacobs*, 2024 WL 894861 at *4 (citing *LeBoon* factors). The *LeBoon* court noted that "not all factors would be relevant in all cases, and that the weight given to each factor would vary from case to case." *Conway*, 2024 WL 551892 at *4, citing *LeBoon*, 503 F.3d at 227.

This Court has recently considered Title VII's implications on Mercy Health in several cases, and in each of these cases, determined that Mercy and any subsidiaries and entities are religious organizations. (See *Jacobs*, 2024 WL 894861; *Conway*, 2024 WL 551892; *Burlison v. Mercy Hospital South*, No. 4:22-cv-01017-SEP, 2023 WL 4560796 (E.D. Mo. July 17, 2023).

The *Jacobs* court highlighted several relevant cases:

> [s]everal district courts, including in this district, have already found other subsidiaries and entities within the Mercy Health Network to be religious organizations exempt from claims of Title VII religious discrimination and retaliation.  Recently, in Conway, the court, applying the *LeBoon* factors, found that Defendant Mercy Hospital St. Louis—a wholly-owned subsidiary of Mercy Health—was a religious entity subject to exemption of Title VII religious discrimination claims. 2024 WL 551892, at *4-5; *see Burlison v. Mercy Hosp. S.*, No. 4:22-cv-01017-SEP, 2023 WL 4560796, at *3 (E.D. Mo. July 17, 2023) (granting defendant Mercy Hospital South's motion to dismiss; stating "courts have routinely found that Mercy Hospital entities qualify for the religious-organization exemption from Title VII"; collecting cases); *Boydston*, 2020 WL 1448112, at *6 (granting summary judgment for a Mercy Health affiliate because it is a religious organization exempt from Title VII religious discrimination claims); *Jenkins v. Mercy Hosp. Rogers*, No. 5:19-CV-05221, 2020 WL 1271371, at *2 (W.D. Ark. Mar. 17, 2020) (describing Mercy as the "sort of entity described in the religious organization exemption from Title VII"); *Young v. St. John's Mercy Health Sys.*, No. 4:10-CV-824-TIA, 2011 WL 9155, at *5 (E.D. Mo. Jan. 3, 2011) (finding that Mercy Health entities fell within the MHRA's exemptions for corporations owned and operated by religious groups); *Saeemodarae*, 456 F. Supp. 2d at 1037 (finding no genuine issue of material fact that Mercy is "unequivocally religious.").

*Jacobs*, at *4.

In congruence with the decisions in this district and several other districts, examination of the record before the Court under the *LeBoon* framework clearly establishes that Defendants are exempt, as a religious organization, under Title VII, as described below.

With respect to the first factor, Mercy is a non-profit healthcare provider and it and any affiliates (including MHM Support Services) are listed in the Official Catholic Directory, which identifies religious institutions operated by the Roman Catholic Church and confirms their religious tax-exempt status by the IRS (Docs. 20 at ¶¶ 6, 14; 21 at 14).

As to the second factor, although Defendants provide secular services such as medical care or treatment, this "is not, alone, determinative of whether the entity qualifies for a religious exemption." *Jacobs*, 2024 WL 894861, at *5 quoting *Conway*, 2024 WL 551892, at *5.  Courts

13

look at whether the entity's activities are "clearly motivated by religious purpose and in accordance with religious doctrine," even where the activities themselves are secular. *Jacobs*, 2024 WL 894861, at *5.  Mercy Health's mission statement reflects its religious purpose: "As the Sisters of Mercy before us, we bring to life the healing ministry of Jesus through our compassionate care and exceptional service." (Doc. 20 at ¶ 5).  Additionally, Mercy adheres to Ethical and Religious Directives for Catholic Health Care Services promulgated by the United States Conference of Bishops (*id*. at ¶ 9).  It is also undisputed that MHM Support Services was "organized '[t]o perform activities related to the provision of health services under the sponsorship of [Mercy Health Ministry],'" the "pontifical public juridic person granted juridic personality by decree of the Congregation for Institutes of Consecrated Life and Societies of Apostolic Life." (*id*. at ¶ 13).  In accordance with findings in previous cases, the undisputed facts show that even though Defendants perform secular activities, the activities are clearly motivated by religious purpose and in accordance with religious doctrine.  *See Jacobs*, 2024 WL 894861, at *5 *citing Boydston*, 2020 WL 1448112, at *5 ("Treatment of the sick through medical science and technology is an action that may be motivated by a religious purpose and reflect religious character." ); *Conway*, 2024 WL 551892, at *5 (finding that the second factor was less relevant because Mercy's secular medical service was "overshadowed by Defendant's readily apparent religious purpose and character.").

     Regarding factors three and four, Mercy's Articles of Incorporation and Bylaws state its purpose is "continuing the healing acts of Jesus Christ in accordance with the doctrines and tenets of the Catholic Church" (Doc. 20 at ¶ 8).  MHM Support Service's bylaws state its purpose is "to witness to Christ's concern for the care of the sick and injured and the teaching of the Roman Catholic Church regarding Christian health services and charity . . . ." (*id*. at ¶ 12).

14

Also, Mercy is the civil legal entity created and organized under Missouri law through which Mercy Health Ministries and the Catholic Church perform their healthcare services and mission work (*id*. at ¶ 4). Further, it is undisputed that Mercy is owned and operated by the Catholic Church (*id*. at ¶¶ 1-15, 22).

With respect to the fifth factor, it is undisputed that MHM Support Services is a wholly-owned subsidiary of Mercy Health (*id*. at ¶ 11). MHM is a public juridic personality of the Roman Catholic Church, organized under the Catholic Church's Canon law (*id*. at ¶ 2). Mercy's Board of Directors consists of four nuns from the religious order of the Sisters of Mercy and is accountable to the Vatican Dicastery of the Congregation for the Institutes of Consecrated Life and Societies of Apostolic Life (*id*. at ¶ 7).

As to factors six, seven, and eight, Mercy's workplace is adorned with religious imagery and prayer is communicated over the public address system at least once per day (*id*. at ¶ 10).

Finally, no evidence or arguments before the Court relate to the ninth factor, whether membership is made up of coreligionists, but this factor alone should be afforded little weight in light of the overwhelming religious affiliation, purpose, and character set forth by the other factors. S*ee Jacobs*, 2024 WL 894861, at *5.

Considering all of these factors together, Defendants are religious entities within the meaning of Title VII's exemption, and the exemption shields them from religious discrimination claims, including claims arising from disputes over vaccination requirements. S*ee Jacobs*, 2024 WL 894861; *Conway*, 2024 WL 551892; *Burlison*, 2023 WL 4560796. Defendants are entitled to summary judgment as a matter of law as exempt from Title VII religious discrimination claims. Based on the reasoning above, Defendants are entitled to summary judgment.

15

## V.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED with prejudice**.  A separate judgment will accompany this memorandum and order.

Dated this 16th day of July, 2024.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE